IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Petitioner, | ) Case No. _____ |
| | ) |
| v. | ) |
| | ) |
| TENNESSEE DEPARTMENT OF COMMERCE AND INSURANCE, | ) |
| Respondent. | ) |

**PETITION TO ENFORCE SUMMONSES**

The United States of America petitions this Court for an order enforcing the IRS administrative summonses served on the respondent, the Tennessee Department of Commerce and Insurance ("TDCI").

**INTRODUCTION**

1. The United States seeks to enforce summonses served on TDCI seeking records related to TDCI's authorization of many companies, purporting to be micro-captive insurers, formed under the laws of Tennessee. The IRS has found that micro-captive insurance transactions, which are described in greater detail below, have the potential for tax avoidance and tax evasion. TDCI has issued certificates of authority to dozens of companies formed by Oxford Insurance Company TN, LLC ("Oxford"), which assists in the creation and management of putative micro-captive insurers. The IRS seeks records in connection with its income tax audits of those micro-captive companies, and the TDCI has declined to produce such records without a court order.

## JURISDICTION AND PARTIES

2. The Court has jurisdiction over this matter under 26 U.S.C. §§ 7402 and 7604(a), as well as 28 U.S.C. §§ 1340 and 1345.

3. Petitioner is the United States of America.

4. Respondent TDCI is an agency of the State of Tennessee and resides or may be found within the boundaries of this judicial district.

## BACKGROUND

5. IRS Revenue Agents are conducting examinations of the tax liability of many purported micro-captive insurance companies. A micro-captive insurance company is a small insurer that insures risks of companies related to it by ownership. Declaration of Revenue Agent Dorie Hill (**Ex. 1**), ¶¶ 2-3.

6. Under 26 U.S.C. § 831(b), subject to certain requirements, insurance companies whose net written premiums (or, if greater, direct written premiums) for the taxable year do not exceed $2,200,000[1] may elect to be subject to investment income taxation in lieu of tax imposed on their premium income. Hill Decl., ¶ 4.

7. Captive insurance companies who elect this tax treatment under 26 U.S.C. § 831(b) are known as "micro-captive" insurers. That is because their premiums are small ("micro") and they insure companies related to them by ownership ("captive"). Hill Decl., ¶ 5.

8. The IRS has concluded that micro-captive insurance transactions have the potential for tax avoidance or evasion. Hill Decl., ¶ 6. For years 2015-2019, 2022, and 2023, the IRS included abusive transactions involving micro-captives on its annual list of "Dirty Dozen" tax scams. *Id. See also* IR-2015-19, IR 2016-25, IR-2017-31, IR-2018-62, IR-2019-47, IR-2022-

---

[1] This sum is adjusted annually for inflation, and the statutory limit was $2,650,000 for 2023.

125, IR-2023-71; *see also* https://www.irs.gov/newsroom/dirty-dozen (last visited 02/04/25) (linking to the various "Dirty Dozen" notices).

9. On November 21, 2016, the IRS published Notice 2016-66, Transaction of Interest – Section 831(B) Micro-Captive Transactions. Notice 2016-66 alerted taxpayers and material advisors that the IRS believed micro-captive insurance transactions have the potential for tax avoidance or evasion. It established requirements to report micro-captive insurance transactions to the IRS. *Transaction of Int. -- Section 831(b) Micro-Captive Transactions*, 2016-47 I.R.B. 745 (2016). Hill Decl., ¶ 7.

10. In 2022, the United States District Court for the Eastern District of Tennessee held that Notice 2016-66 was a legislative rule subject to the Administrative Procedure Act's notice and comment requirements. *See CIC Servs., LLC v. Internal Revenue Serv.*, 592 F. Supp. 3d 677, 683 (E.D. Tenn. 2022). The IRS subsequently ceased enforcing the notice. Hill Decl., ¶ 8.

11. On April 11, 2023, the IRS published a Notice of Proposed Rulemaking (the "NPRM") setting forth, and seeking comment on, proposed regulations that would require micro-captives, their putative insureds, and material advisors to report certain micro-captive transactions to the IRS. *See* 88 FR 21547-01. In the preamble to the NPRM, the IRS explained how micro-captive transactions can be used to unlawfully avoid or evade income tax. Hill Decl., ¶ 9.

12. As set forth in greater detail in the NPRM, the IRS has found that taxpayers with ownership interests in micro-captives make premium payments to the micro-captive and deduct the payments as ordinary and necessary business expenses under 26 U.S.C. § 162. The micro-captives, in turn, exclude these premium payments from their taxable income under 26 U.S.C. §

831(b). As a result, neither party pays income tax on the amount of money paid as premiums. Hill Decl., ¶ 10.[2]

13. To lawfully claim these tax benefits, however, the putative insured and micro-captive must actually transact in insurance. That is, there must be a risk of economic loss from a fortuitous occurrence. The insurance contract must shift and distribute that risk. And the arrangement must constitute insurance as that term is commonly accepted. Hill Decl., ¶ 11.

14. The IRS concluded that certain micro-captive contracts, however, do not constitute insurance. Certain contracts are interpreted, administered, and applied in a manner inconsistent with arm's length transactions and sound business practices, and certain micro-captives do not behave as insurance companies commonly would. NPRM at 21555. For example, a micro-captive "may fail to adequately distribute risk or fail to employ actuarial techniques to establish premium rates that appropriately reflect the risk of loss and costs of conducting an insurance business." *Id*. The micro-captive may also use its premium income for something other than administering and paying claims, like "routing funds that have not been taxed to the Insured or a person related to the Insured or its owners." *Id. See also* Hill Decl., ¶ 12; *Reserve Mechanical Corp. v. Commissioner,* 34 F.4th 881 (10th Cir. 2022); *Swift v. Comm'r of Internal Revenue*, T.C.M. (RIA) 2024-013 (T.C. 2024) (micro-captive companies lacked sufficient risk distribution to qualify as insurers); *Avrahami v. Comm'r of Internal Revenue*, 149

---

[2] The Oxford micro-captive transactions include an additional step. An insured will pay a premium to an Oxford-managed insurer (the "Fronting Insurer"), which provides insurance to the insured. The Fronting Insurer then transmits an equal premium amount to the insured's related micro-captive, and that micro-captive reinsures the Fronting Insurer for claims arising out of the insured. In this case, as in the simpler example discussed above, the insured deducts the premium payment under 26 U.S.C. § 162 and the micro-captive avoids paying income tax on the reinsurance premium under 26 U.S.C. § 831(b). Hill Decl., ¶ 10 n.2.

T.C. 144, 190 (2017) (holding that micro-captive contracts were not bona fide insurance policies).

15. On January 14, 2025, the Treasury Department and IRS published the final rule. 90 FR 3534.

16. If the parties to the transaction do not purchase and sell actual insurance, the insured cannot lawfully deduct the premium payments as ordinary and necessary business expenses, and the micro-captive insurer may not lawfully exclude the premiums from its taxable income. Hill Decl., ¶ 13.

17. The IRS commenced examinations of many Tennessee micro-captive companies who claim beneficial tax treatment under 26 U.S.C. § 831(b). Specifically, the IRS is examining whether these companies provide "insurance"—*i.e.*, risk shifting, risk distribution, insurance risk, and whether they provide what is commonly accepted as insurance—as is necessary to claim this tax treatment. The summoned information, therefore, is relevant to determining the correctness of the tax returns of the taxpayers and the determination of the correct tax liability of the taxpayers. Hill Decl., ¶ 14.

18. TDCI issued certificates of authority to many micro-captives formed by Oxford. Oxford and / or its affiliates offer services to assist in the creation and management of micro-captives. Hill Decl., ¶ 15.

19. To apply for a certificate of authority, a micro-captive must submit an application and supporting documents for TDCI's consideration. As a result of that regulatory process, TDCI has records—generated by both the micro-captive and by TDCI—relevant to the IRS's examinations of these micro-captives. Hill Decl., ¶ 16.

## THE IRS SUMMONSES

20. IRS revenue agents are authorized to issue IRS summonses. 26 U.S.C. § 7602; 26 C.F.R. § 301.7602-1; 26 C.F.R. § 301.7602-1T; IRS Delegation Order No. 25-1, found in the Internal Revenue Manual § 1.2.2.15.1. Hill Decl., ¶ 17. Under 26 U.S.C. §§ 7602-7613, the IRS has broad authority to obtain records pertinent to income tax examinations, and the statute should be liberally construed. *United States v. Widelski*, 452 F.2d 1, 4 (6th Cir. 1971); *United States v. Snow*, No. 2:14-CV-287, 2015 WL 914691, at *2 (E.D. Tenn. Mar. 3, 2015).

21. To enforce a summons, the United States must establish that the summons (1) is issued for a legitimate purpose, (2) seeks information relevant to that purpose, (3) seeks information that is not already within the IRS's possession, and (4) satisfies all administrative requirements in the Internal Revenue Code. *United States v. Powell*, 379 U.S. 48, 57-58 (1964).

22. The attached declaration of Revenue Agent Dorie Hill establishes the government's *prima facie* case under *Powell* that the summonses at issue in this case, described in paragraphs 23-25, below, are enforceable.

23. In furtherance of the IRS's examination of the tax liability of micro-captive companies, during the years 2023 and 2024, revenue agents served attested copies of IRS administrative summonses on TDCI, directing TDCI to provide information set out in the summonses by either appearing with the requested materials or delivering the requested documents to the IRS. Each of the summons directed TDCI to produce a privilege log with respect to any documents withheld on grounds of privilege. Hill Decl., ¶ 18.

24. The summonses are further described as follows:

| Taxpayer / Micro-Captive Company | IRS Officer Who Issued Summons | Date Served | Tax Periods Under Exam |
|---|---|---|---|
| Series Protected Cell 107, A Series of Oxford Insurance Company TN, LLC | Vicki Simmons | 8/30/2023 | 2020, 2021 |
| Series Protected Cell 40, A Series of Oxford Insurance Co. TN, LLC | Aaron Serfass | 8/30/2023 | 2020 |
| Series Protected Cell 140, A Series of Oxford Insurance Co. TN, LLC | Dorie Hill | 8/30/2023 | 2019, 2020, 2021 |
| Series Protected Cell 35-CS, A Series of Oxford Insurance Co. TN | Tina Toolson | 8/30/2023 | 2020, 2021 |
| Series Protected Cell 2-CS, A Series of Oxford Insurance Co. TN, LLC | Tina Toolson | 8/30/2023 | 2020, 2021 |
| Series Protected Cell 56-CS, A Series of Oxford Insurance Co. TN, LLC | Tina Toolson | 8/30/2023 | 2020, 2021 |
| Series Protected Cell CS-28, A Series of Oxford Insurance Co. TN, LLC | Vicki Simmons | 8/30/2023 | 2018, 2019, 2020 |
| Series Protected Cell 51-CS, A Series of Oxford Insurance Co. TN, LLC | Vicki Simmons | 8/30/2023 | 2018, 2019 |
| Series Protected Cell 83-CS, A Series of Oxford Insurance Co. TN, LLC | Vicki Simmons | 8/30/2023 | 2018, 2019 |
| Series Protected Cell 86-CS, A Series of Oxford Insurance Co. TN, LLC | Vicki Simmons | 8/30/2023 | 2018-2021 |
| Series Protected Cell 21-CS of Oxford Insurance Co. TN, LLC | Joy Lee | 8/30/2023 | 2018-2021 |
| Series Protected Cell 108 A Series of Oxford Insurance Co. TN, LLC | Amal Younan | 11/14/2023 | 2018-2021 |
| Series Protected Cell 85-CS, A Series of Oxford Insurance Co. TN, LLC | Andrew Chang | 10/30/2023 | 2020, 2021 |
| Series Protected Cell 109, A Series of Oxford Insurance Co. TN, LLC | Andrew Chang | 10/30/2023 | 2020, 2021 |
| Series Protected Cell 119, A Series of Oxford Insurance Co. TN, LLC | Andrew Chang | 10/30/2023 | 2020, 2021 |
| Series Protected Cell 223, A Series of Oxford Insurance Co. TN, LLC | Dominic Madeueke | 10/02/2023 | 2018, 2019, 2021 |
| Series Protected Cell 224, A Series of Oxford Insurance Co. TN, LLC | Dominic Madeueke | 10/02/2023 | 2018, 2019, 2021 |
| Series Protected Cell 92-CS, A Series of Oxford Insurance Co. TN, LLC | James Jimenez | 08/30/2023 | 2018-2020 |
| Series Protected Cell 145, A Series of Oxford Insurance Co. TN, LLC | James Jimenez | 10/02/2023 | 2018-2020 |
| Series Protected Cell 166-CS, A Series of Oxford Insurance Co. TN, LLC | Rene Silvan | 08/30/2023 | 2016-2018 |
| Series Protected Cell 97-CS, A Series of Oxford Insurance Co. TN, LLC | Natalie Dudek | 8/30/2023 | 2018-2020 |

| Taxpayer / Micro-Captive Company | IRS Officer Who Issued Summons | Date Served | Tax Periods Under Exam |
|---|---|---|---|
| Series Protected Cell 156-CS, A Series of Oxford Insurance Co. TN, LLC | Natalie Dudek | 8/30/2023 | 2018-2020 |
| Series Protected Cell 137, A Series of Oxford Insurance Co. TN, LLC | Andrew Carter | 3/5/2024 | 2019-2021 |

Hill Decl., ¶ 19.

    25.    Each summons sought the following documents from TDCI:

1. Provide all correspondence between TDCI and TAXPAYER[3] related to TAXPAYER and CAPTIVE INSURANCE PROGRAM, including but not limited to email correspondence.

2. Provide all correspondence between TDCI and OXFORD related to TAXPAYER and CAPTIVE INSURANCE PROGRAM, including but not limited to email correspondence.

3. Provide all internal manuals, internal memoranda, administrative or executive orders, or other documents related to the TDCI's policies and procedures regarding the issuance of an insurance Certificate of Authority and/or a Supplemental Certificate of Authority by the State of Tennessee applicable to TAXPAYER.

4. Provide all internal manuals, internal memoranda, administrative or executive orders, or other documents related to the TDCI's policies and procedures regarding the issuance of Certificate of Numbers by the State of Tennessee applicable to TAXPAYER.

5. Provide all internal manuals, internal memoranda, administrative or executive orders, or other documents related to the TDCI's policies and procedures regarding the binding of insurance coverage, issuance of insurance policies and/or entering into reinsurance contracts by an insurance company prior to the receipt of a Certificate of Authority and/or a Supplemental Certificate of Authority by the State of Tennessee applicable to TAXPAYER.

6. Provide all documents pertaining to any audits of TAXPAYER conducted by or on behalf of TDCI.

---

[3] Each summons defines "Taxpayer" as one of the micro-captives identified in the left column of paragraph 24.

> 7. Provide all documents and materials reviewed related to TAXPAYER's CAPTIVE INSURANCE PROGRAM and/or TAXPAYER's license(s) with TDCI.

Hill Decl., ¶ 20.

26. TDCI objected to all the summonses and failed to comply with them. TDCI has objected on the grounds that the summonses (1) are beyond the scope of what is permitted under 26 U.S.C. §7602 because the requested information is not relevant, (2) the requests are overbroad, (3) the requests are burdensome, (4) the requests "may" seek documents that are protected from disclosure by the attorney-client communications privilege, the work product doctrine, and other unenumerated "state law privileges, and / or common-law privileges," and (5) the requests seek documents protected from disclosure under Tenn. Code Ann. § 56-13-103(c), which provides, *inter alia*, that information submitted to TDCI for the purpose of receiving a captive insurance license shall not be made public without the written consent of the captive insurer. Hill Decl., ¶ 21.

27. The summonses seek relevant information, as the IRS's summons power extends to any documents that "'might throw light upon'" the correctness of the micro-captive returns. *United States v. Arthur Young & Co.*, 465 U.S. 805, 813 n. 11 (1984) (quoting *United States v. Harrington,* 388 F.2d 520, 524 (1968)). Here, the requested documents pertain to whether the micro-captives are providing bona fide insurance and, hence, are eligible for treatment under 26 U.S.C. § 831(b). Specifically, document requests 1, 2, 6, and 7 seek information tailored to a communication with, about, or from a specific taxpayer that filed documents with TDCI. Such documents relating to an application for a license to issue insurance clearly bear on whether the applicant is a bona fide insurer. Document requests 3-5 seek TDCI internal policies and criteria that bear on whether the micro-captives are eligible for a license to operate in Tennessee. These

records will inform whether the licensed micro-captives are bona fide insurers under TDCI's criteria. Only bona fide insurers are eligible for § 831(b) treatment, and the degree to which the micro-captives comply—or do not comply—with TDCI's criteria bears on that issue. Furthermore, there is likely only one set of "internal manuals" responsive to all the summonses' requests nos. 3-5, and the IRS will not insist that this single set of records – responsive to all of the 23 summonses – be produced 23 times, but instead insists that it be produced only one time, which shows that the burden is not a heavy one. Accordingly, the requested documents bear directly on the correctness of the micro-captives' returns and the determination of the micro-captives correct tax liability. Hill Decl., ¶ 22.

28. The summonses are not overbroad because they sufficiently apprise TDCI which documents are needed. Hill Decl., ¶ 20; *United States v. Medlin*, 986 F.2d 463, 467 (11th Cir. 1993) ("An IRS summons is overbroad if it 'does not advise the summoned party what is required of him with sufficient specificity to permit him to respond adequately to the summons.'" (quoting *United States v. Wyatt*, 637 F.2d 293, 302 n.16 (5th Cir. 1981))). Here, TDCI complains that the IRS requested too many documents, but to establish that a summons is overbroad, TDCI must demonstrate that the summons does not apprise it of the particular documents sought. Here, the summonses identify discernible documents related to particular micro-captives under examination.

29. TDCI has not set forth any facts that would show that compliance with the summonses is burdensome. "'Unduly burdensome' refers to the 'imposition of an unreasonable and excessive financial burden' in producing the summonsed information." *United States v. Cox*, 73 F. Supp. 2d 751, 764 (S.D. Tex. 1999) (quoting *United States v. Dauphin Deposit Trust Co.,* 385 F.2d 129, 130 (3rd Cir.1967)). Furthermore, the summonses are not burdensome

because they seek only seven categories of documents relevant to a key issue in the micro-captives' returns. *See United States v. Henzel Elec. Co.*, No. 260, 1980 WL 1506, at *3 (N.D.N.Y. Jan. 31, 1980) (rejecting burdensome challenge because the summons was "reasonable"); *see also United States v. Ruggeiro*, 425 F.2d 1069, 1071 (9th Cir. 1970) (rejecting objection that compliance with summons was too onerous when the records sought were relevant to the investigation). To the extent the same document is requested by each of the 23 summonses, TDCI need only produce the document once and then refer to it (e.g., by Bates number) in response to each summons.

30. To the extent TDCI contends that certain documents are privileged from disclosure, TDCI has the burden to establish any privilege invoked. To do so, it should provide a privilege log identifying the privilege under which each document is withheld and a description of the document that will enable the United States to assess the privilege claim. The summonses directed TDCI to prepare a privilege log for any document withheld on privilege grounds. Hill Decl., ¶ 18. Fed. R. Civ. P. 26(b)(5).

31. Tenn. Code Ann. § 56-13-103(c) does not preclude TDCI from complying with the summonses issued under 26 U.S.C. § 7602. Even if this statute were applicable (it is not, as set forth below), it would protect only information a micro-captive *submits to* TDCI in connection with a micro-captive's application for a license. *See* Tenn. Code Ann. § 56-13-103(c) ("Information submitted pursuant to this subsection (c) shall be and remain confidential…."). Only the summonses' first request for documents (correspondence between the micro-captives and TDCI) would potentially implicate this provision. Document requests numbered 2-7 do not seek documents the micro-captive submitted to TDCI, but instead seek TDCI-generated documents related to the micro-captives, like TDCI's audits of the micro-

11

captives and TDCI's correspondence with Oxford. As a result, Tenn. Code Ann. § 56-13-103(c), even if applicable here, would not pose a barrier to production of the majority of responsive documents.

32. In any event, to override the IRS's § 7602 summons authority, the Tennessee statute would have to "reverse preempt" the conflicting federal statute under 15 U.S.C. § 1012, known as the McCarran-Ferguson Act. The McCarran-Ferguson Act reserves regulation of the business of insurance to the states and, in some circumstances, will prevent application of a federal statute if it were to impair such state regulation.

33. But the McCarran-Ferguson Act permits a state statute to "reverse preempt" a federal statute only insofar as the state statute regulates the business of insurance. Here, TDCI's non-disclosure of micro-captive documents is not the "business of insurance." That is because, under the law of the Sixth Circuit, to constitute the "business of insurance," the activity in question must "transfer[] or spread[] a policyholder's risk," be an "integral part of the policy relationship between the insurer and the insured," and constitute a practice "limited to entities within the insurance industry." *Genord v. Blue Cross & Blue Shield of Michigan*, 440 F.3d 802, 806 (6th Cir. 2006). TDCI's non-disclosure of records is none of those things. Nor do the summonses and TDCI's refusal to comply concern the relationship between the insured and insurer; it seeks information from TDCI. Thus, the activity in question—the disclosure or non-disclosure of these records—is not the "business of insurance." *See United States v. Dep't of Ins.*, 66 F.4th 114, 130 (3d Cir.), *cert. denied sub nom. Delaware Dep't of Ins. v. United States*, 144 S. Ct. 422, 217 L. Ed. 2d 235 (2023) (enforcing IRS summons seeking information related to micro-captives served on Delaware Department of Insurance over the Department's objections

that McCarran-Ferguson Act and Delaware confidentiality statute "reverse preempted" IRS summons authority under 26 U.S.C. § 7602).

34. The documents described in the summonses are not already in the possession of the IRS or are otherwise necessary to evaluate the accuracy or completeness of documents produced to the IRS through other channels. Hill Decl., ¶ 23. For example, the IRS sought correspondence between TDCI and the micro-captives from the micro-captives themselves, but the responses have been inconsistent and, in some cases, incomplete. The IRS seeks correspondence from TDCI directly to ensure the accuracy and completeness of such records. Hill Decl., ¶ 23. *Sugarloaf Funding, LLC v. U.S. Dep't Of The Treasury*, 584 F.3d 340, 347-350 (1st Cir. 2009); *Lyons Trading, LLC v. United States*, No. 3:07-MC-13, 2008 WL 361533, at *5 (E.D. Tenn. Feb. 8, 2008).

35. All administrative steps required by the Internal Revenue Code for the issuance of the IRS summonses have been followed. Hill Decl., ¶ 24.

36. The books, records, paper, or other data sought by the summonses may be relevant to the IRS's investigations. Hill Decl., ¶ 25.

37. No Justice Department referral is in effect within the meaning of 26 U.S.C. § 7602(d)(2) with respect to the taxpayers for the years under examination. Hill Decl., ¶ 26.

For these reasons, the United States requests that this Court:

A. Enter the attached order directing the respondent to show cause in writing, if any, why it should not be required to comply with and obey the IRS summonses;[4]

---

[4] Due to the potential complexity of any briefing, the United States has proposed an opposition page limit of 30 pages and a reply page limit of 20 pages and an elongated briefing schedule.

B. Direct the respondent to fully comply with the IRS summonses by ordering the production required and called for by the terms of the summonses at the time and place specified by the revenue agents, their designee, or any other proper officer or employee of the IRS;

C. Award the United States its costs incurred in maintaining this proceeding; and

D. Grant other appropriate relief.

Date: February 4, 2025

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ William J. Harrington*
WILLIAM J. HARRINGTON
WARD W. BENSON
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227, Ben Franklin Station
Washington, D.C. 20044
Telephone: 202-353-1882
William.J.Harrington@usdoj.gov
Ward.W.Benson@usdoj.gov
*Counsel to the United States*